## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RALPH N. GATHERIGHT, JR. #562112        *

         Plaintiff        *

        v.        *        Civil Action No. GLR-13-1400

MARYLAND CORRECTIONAL TRAINING    *
CENTER, et al.

                             *

        Defendants

                             *

## MEMORANDUM

Plaintiff Ralph N. Gatheright, Jr., is suing Defendants pursuant to 28 U.S.C. § 1983, raising claims premised on an incident that occurred on January 22, 2013, while he was incarcerated at the Maryland Correctional Training Center ("MCTC").[1]   Gatheright alleges Defendants subjected him to excessive force and denied him access to medical treatment for his resulting injuries.  For relief, he requests compensatory and punitive damages of $100,000.  ECF No. 9, p. 6.

Defendants MCTC, Officer Justin Fisher, Officer Joseph Garlitz, Sgt. Paul Lawhorne, and Sgt. Todd Ricker, responded to the Complaint with a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 17), accompanied by exhibits and affidavits.  Plaintiff opposes the Motion.[2]   ECF No.  23. Upon review of the pleadings, exhibits, and applicable case law, the Court finds no hearing necessary.  See Local Rule 105.6 (D. Md. 2014).  For the reasons discussed in more detail below, MCTC will be dismissed as a party in

---

[1]  Gatheright is presently confined at North Branch Correctional Institution ("NBCI").
[2]  Gatheright was provided an opportunity to file affidavits with his opposition, in accordance with the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  He has not submitted affidavits in support of his claim.

this proceeding and summary judgment will be entered in favor of the remaining Defendants.

## I. Background

Gatheright alleges Ricker, Lawhorne, Fisher, and Garlitz assaulted him on January 22, 2013, by beating his hands with a master lock and canisters of pepper spray after he refused to remove his hands from the feed slot in his cell door.  Gatheright was demanding to speak with Captain Woods about food and medical issues and refused to remove his arm from the slot so that it could be secured, despite being ordered to do so.  Gatheright alleges the officers tried to force his arm and a struggle ensued.  ECF No. 1, p. 4; ECF No. 9.

He further alleges Ricker ordered the other officers to hit Gatheright's hands with the master lock used to secure the slot.  ECF No. 1, p. 7.  Then Fisher and Ricker hit him repeatedly with pepper spray canisters and slam his hands in the feed slot.  Id.  Once Ricker realized Gatheright had scrapes, cuts, and bruises on his hands and was not going to remove them from the slot, however, Ricker ordered the officers to stop using force.  Id.  Ricker then tried reasoning with Gatheright by promising to arrange for Captain Woods to speak to him.  Gatheright then withdrew his hands and the slot was secured.  Id.

Several minutes after the incident, Gatheright alleges he requested medical treatment.  Nevertheless, Gatheright asserts that he neither spoke with Captain Woods nor received medical attention.  Three days later, on January 25, 2013, Gatheright was taken to the medical unit where he provided a statement concerning how he sustains the injuries to his hands.  Photos of his injuries were taken.  Id.

Defendants' version of the incident varies significantly.  In support of their dispositive Motion, Defendants have filed a number of exhibits including affidavits executed by the correction officers, the decision of the hearing officer finding Gatheright guilty of rule violations

arising from the incident, the Internal Investigation Unit ("IIU") report of the incident, Gatheright's medical records, and copies of Gatheright's pertinent Administrative Remedy Procedure ("ARP") requests.

Defendants assert that Garlitz was in the process of collecting food trays in Housing Unit 5, A Tier when Gatheright refused to remove his arm from the feed slot. Garlitz asked Gatheright to put his arm back in the cell. Gatheright refused and demanded to speak with Captain Wood. Garlitz then gave Gatheright a direct order to remove his hands from the slot. Gatheright refused again and began to kick his cell door. Garlitz then gave Gatheright a second direct order to remove his hands, and again he refused and began to incite unrest on the tier by yelling "Fuck you we are going to war" . . . "burn this tier down" and "tell B-tier to set the tier on fire." The other inmates also began to yell and kick their cell doors.

A spit shield was placed in front of Gatheright's cell door. Gatheright started punching the spit shield and knocked it over. Garlitz went to Gatheright's cell to reset the spit shield and noticed Gatheright had cuts on his hand from punching the shield. After the spit shield was removed, Ricker ordered Gatheright to remove his hand from the slot so he could be placed in handcuffs and taken to the dispensary for medical treatment. Gatheright, however, refused medical treatment and refused to remove his hand from the slot until he spoke to Captain Wood. Ricker told Gatheright that he would tell Captain Wood Gatheright wanted to see him. Gatheright finally withdrew his hand from the slot without further incident, and Captain Wood was contacted.

Defendants assert that at no time did they force Gatheright's arm or struggle with him in an effort to secure the feed slot. Further, Defendants aver they were never ordered to hit Gatheright's hands with a master lock or slam them in the feed slot.

As a result of the incident, Gatheright was charged with violating institutional rule numbers 104 (use of threatening language), 116 (misuse, tampering with, damaging, destruction, or unauthorized possession of security equipment, tools, etc.), 312 (interfering with or resisting the duties of staff), 405 (any exhibition, demonstration, or conveyance of insolence, disrespect, or vulgar language), and 408 (misuse, alteration, tampering with, damaging or destruction of any property, tool, or equipment to include possession of any property in a hazardous condition). ECF No. 17, Ex. 2, p. 3.  At the adjustment hearing held on January 31, 2013, Gatheright pled not guilty to the charges.  Id. p. 7.  The hearing officer determined Gatheright was guilty of the rule violations, and noted his poor adjustment history.  Gatheright received 250 days of disciplinary segregation and 120 good conduct credits were revoked.  Id. p. 9.  The Warden affirmed the decision on February 14, 2013.

On January 31 2013, Gatheright filed an ARP alleging that he was assaulted by Ricker, Fisher, Lawhorne, and Garlitz and was denied medical care.  ECF No. 17, Ex. 8, p. 4.[3] Lieutenant Dewayne Draper investigated the incident and found no evidence to support Gatheright's allegations.  Id. p. 22.  Draper's IIU report was forwarded to the Washington County States Attorney's Office for review.[4]

On January 25, 2013, Rebecca Barnhart, R.N. examined Gatheright for complaints of hand and knuckle pain.  Gatheright reported to Barnhart that his hands were injured when he refused to put them back through the feed slot as requested.  Id.  Barnhart noted several small abrasions on Gatheright's hands and his left wrist with swelling over his left third phalangeal joint.  She further noted difficulty with bending the right pinky finger.  Id.  She assessed

---

[3] References to page numbers in record citations are to those generated by the court's electronic case filing system.

[4] There is no record of charges filed against Defendants in state court based on the incident.

Gatheright's comfort level and advised him to submit a sick-call slip if the symptoms did not subside or if they became more severe. Id. pp. 29-31.

On February 17, 2013, Gatheright submitted a sick call slip complaining that his right hand was not functioning properly. Id. p. 25. On July 21, 2013, he was seen by Kristi Cortz, R.N. for complaints of right pinky discomfort and a tingling sensation from his right pinky. Gatheright was prescribed Motrin and cold compresses. He was also given an exercise program. Id. p. 39-41.

On March 7, 2013, Gatheright submitted another sick-call slip complaining of limited right hand movement, particularly in his right pinky finger. Id. p. 24. On March 9, 2013, Gatheright was examined by Dawn Hawk, R.N. who determined his right hand and pinky movement and range of motion was within normal limits. Id. at pp. 45-46. No weakness, swelling, malformation, or bruising was noted. Nurse Hawk reported that Gatheright initially stated he could not bend his pinky all of the way, but after he flexed his fingers several times, Gatheright bent his pinky several times without difficulty or distress. Id. p. 45. A May 25, 2013, x-ray of Gatheright's right hand and fourth and fifth fingers showed no evidence of an acute fracture, dislocation, or subluxation. Id. p. 51. On June 19, 2013, plaintiff was seen by Colin Ottey, M.D. after complaining of pain in his right hand, and a tingling sensation when he touched his right thumb to his fifth finger or pinky. Id. at pp. 59-60.[5]

On July 16, 2013, Gatheright filed a sick-call slip stating that since July 10, 2013, he had been assisting officers to open his stuck feed slot by pushing and banging on it. Id. p. 22. He was seen in the medical department by Michele Schultz, R.N. on July 18, 2013. Id. pp. 66-69. Examination of his hand revealed no bruising, deformity, tenderness, pain, spasms, weakness,

---

[5] Gatheright also complained of unrelated shoulder pain he attributed to behind the back handcuffing. ECF No. 17, Ex. 9, p. 60).

discoloration, tingling, numbness, or swelling.  Id.  Sensation was intact and the range of motion

was within normal limits.  Id.  Acetaminophen was ordered, however, per the pharmacy, it could

not be filled because Gatheright was already receiving 400 mg. Ibuprofen tablets for pain.  Id. p.

69.

On January 17, 2013, Gatheright filed ARP, MCTC #0073-13, alleging that he had been

requesting medical treatment since January 15, 2013.  ECF 17, Ex. 10, p. 1.  On January 23,

2013, Gatheright submitted a second ARP, MCTC #0074-13, stating that he had been requesting

medical treatment since January 22, 2013. Id. p. 2. In ARP MCTC #0074-13, Gatheright alleged

the he was in immediate need of medical treatment but was being denied.  Id.  Further, he asked

that ARP #0073-13 be disregarded.  Id.  Both ARPs were procedurally dismissed pending

resubmission by February 12, 2013, because they did not provide sufficient information.  Id. pp.

1-2.  On July 3, 2013, Gatheright "appealed" the disposition of ARP MCTC-0073 with the

Inmate Grievance Office.  ECF No. 17, Ex. 11.[6]

On January 30, 2013, Plaintiff filed ARP MCTC #0089-13, alleging that he was

assaulted by Ricker, Lawhorne, Fisher and Garlitz on January 22, 2013.  The ARP was dismissed

on February 4, 2013, because the allegations were being investigated by the IIU.

## II. Discussion

### A.    Standard of Review

#### 1. Motion to Dismiss

To survive a Rule 12(b)(6) Motion to Dismiss, a complaint must set forth "a claim for

relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);  Bell Atl. Corp.

---

[6]   To the extent Gatheright filed the instant Complaint prior to fully exhausting his administrative remedies concerning complaints corrections officers refused to allow him access to medical care, his claims are dismissible on this basis.

v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Iqbal, 556 U.S. at 678;  Twombly, 555 U.S. at 556.  In considering

a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the

plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  Mylan Labs.,

Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

> [A] pro se complaint, however inartfully pleaded, must be held to less stringent
> standards than formal pleadings drafted by lawyers and can only be dismissed for
> failure to state a claim if it appears beyond doubt that the plaintiff can prove no
> set of facts in support of his claim which would entitle him to relief.

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21

(1972)) (internal quotation marks omitted).

### 2.      Summary Judgment

"When matters outside the pleading are presented to and not excluded by the court, the

12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in

Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998)

(quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil

Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is

no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter

of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most

favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

(citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).  Once a motion for summary

judgment is properly made and supported, the opposing party has the burden of showing that a

genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248;  see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir.) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

**B.    Analysis**

**1.    Claims against MCTC**

Under the Eleventh Amendment to the United States Constitution, a state, or one of its agencies or departments, is immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  See Penhurst State Sch. and Hosp. v Halderman, 465 U.S. 89, 100 (1984).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Ann. Code, State Gov't. Art., § 12- 201(a) (2014 West), it has not waived immunity under the Eleventh Amendment to suit in federal court. Thus, MCTC is not subject to suit in the federal district court.

Further, MCTC is not a proper defendant in a § 1983 action, for which a plaintiff must allege injury by a "person" acting under color of state law.  See 42 U.S.C. § 1983; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a

"person" includes individuals and "bodies politic and corporate"); see generally 5 Charles Alan Wright, et al., Fed. Prac. & Proc. § 1230 (2002). MCTC is a building, an inanimate object that cannot act under color of state law and therefore is not a "person" subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (affirming the dismissal of a § 1983 claim against the Piedmont Regional Jail because the jail is not a "person" and, therefore, not amenable to suit under § 1983). For these reasons, MCTC will be dismissed as a defendant from this action.

### 2.     Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986). Absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. See id.

The Court should grant summary judgment "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. Although a court may not ordinarily determine credibility between the parties, Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991), "[w]hen

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion of summary judgment." Smith v. Ozmint, 578 F.3d 246, 254 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)) (internal quotation marks omitted).

The uncontroverted facts demonstrate that Gatheright defied an officer's direct order to remove his hands from the feed slot and proceeded to incite unrest on the tier. The parties, however, offer different versions of how Gatheright sustained cuts and abrasions to his hands. While Gatheright alleges his injuries were caused by blows to his hands with a master lock and canisters, these allegations are inconsistent with his injuries. Further, he provided no affidavits or declarations to support his position. Defendants' affidavits, however, uniformly demonstrate that Gatheright punched the shield, and that they neither struggled with Gatheright, hit his hands with a lock, nor slammed them in the slot. Gatheright's version of events is blatantly contradicted by the record, and he has failed to establish a genuine dispute exists with respect to wantonness in the infliction of pain. Accordingly, Defendants are entitled to summary judgment as to this claim.

### 3. Denial of Medical Care

Gatheright next claims his request for medical care after the incident was denied. Deliberate indifference to a prisoner's serious injury "constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Ga., 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted). Every allegation by a prisoner that he has not received adequate medical treatment does not, however, state a violation of the Eighth Amendment. Id.

To state a claim for denial of medical care, a plaintiff must demonstrate that the actions

of the defendants or their failure to act amounted to deliberate indifference to a serious medical

need.  See Gamble, 429 U.S. at 106.  Deliberate indifference to a serious medical need requires

proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that,

subjectively, the prison staff was aware of the need for medical attention but failed to either

provide it or ensure the needed care was available.  Farmer v. Brennan, 511 U.S. 825, 837

(1994).  The subjective component requires "subjective recklessness" in the face of the serious

medical condition.  Id. at 839– 40.

"True subjective recklessness requires knowledge both of the general risk, and also that

the conduct is inappropriate in light of that risk."  Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir.

1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential

to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk

cannot be said to have inflicted punishment.'"  Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105

(4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).   If the requisite subjective knowledge is

established, an official may avoid liability "if [he] responded reasonably to the risk, even if the

harm was not ultimately averted."  Farmer, 511 U.S. at 844.  Reasonableness of the actions taken

must be judged in light of the risk the defendant actually knew at the time.  Brown v. Harris, 240

F.3d 383, 389 (4th Cir. 2001); see also Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998))

(noting that a court must focus on actions actually taken, not on those that could have been

taken).

Here, Defendants' affidavits uniformly assert that Gatheright refused medical treatment

immediately after the incident.  Gatheright offers no verified evidence to the contrary. Further,

Gatheright fails to establish that the cuts on his hands amounted to serious medical condition,

necessitating immediate medical attention.  Thus, Gatheright does not present facts amounting to

a claim of constitutional violation, and Defendants are entitled to summary judgment in their favor as a matter of law.

### III. Conclusion

For the foregoing reasons, MCTC will be dismissed as a Defendant and summary judgment will be entered in favor of the remaining Defendants.  A separate Order follows.

September 5, 2014

/s/

_____

George L. Russell, III
United States District Judge